## GARWOOD *v.* SIMPSON.

A draft or order by A on B, to pay C, or order, the balance due A by B, is not a negotiable security, not being for any fixed sum, but if endorsed by B, "balance due, one thousand two hundred and ninety-three dollars and seventy-five cents," over his signature, it becomes a promise by B to pay C, or his order, that sum, and is negotiable.

Where, in such a case, B was garnisheed in a suit against C, the day before he made the endorsement, but failed to inform C thereof, and C, for a valuable consideration, sold the order, as endorsed, to D, an innocent purchaser: *Held,* that B, having made the order negotiable, and put the same in circulation, is estopped from setting up against it, any antecedent matter, and is liable to D for the full amount thereof.

And where the order was on a firm, and such an endorsement was made by one of the firm, it operated as a release of the firm, by the holder, and as an acceptance by the partner endorsing.

The party in whose favor a judgment is rendered on a special verdict, must move for a new trial if he is not satisfied with the verdict, as the latter must otherwise be conclusive upon the facts in the appellate Court.

*Per Murray, C. J., dissenting.*—Such an endorsement does not constitute an acceptance, under the circumstances, but only a memorandum of the amount due the drawer of the order.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

Messrs. Carsen & Vance drew their order upon Messrs. Simpson & Jackson.

"Messrs. Simpson & Jackson, please pay the balance due on

the bark New World's cargo, to Edwin Tomlinson or order, and this shall be your receipt.

"CARSEN & VANCE.

"EUREKA, March 5, 1856."

On the fifteenth day of April, one thousand eight hundred and fifty-six, Tomlinson presented the order to Simpson, one of the firm of S. & J., who made this endorsement upon it:

"SAN FRANCISCO, April 15, 1856.

"Balance due on the cargo named in this order, twelve hundred and ninety-three dollars and seventy-five cents.

"A. M. SIMPSON."

On the same day, Tomlinson assigned the order to the plaintiff, for a valuable consideration. On the fourteenth day of April, one day before the presentation of the order, the amount due to Tomlinson was garnisheed by Mills & Vantine, in the hands of Simpson & Jackson. There was no evidence to show that Simpson, at the time he made the endorsement, informed Tomlinson of the garnishment, or that plaintiff had any knowledge of it, at the time he purchased the order. Payment of the sum mentioned in the order was duly demanded by plaintiff, and refused by defendant, and suit was then brought by plaintiff to enforce it. The complaint contains a simple statement of the facts, setting out the order and endorsement in full. Judgment was given for the defendant, and the plaintiff appealed to this Court.

*C. Burbank* for Appellant.

Simpson accepted the order. A blank endorsement of the drawee on an order is an absolute acceptance of the order. 9 Mass. Reports, p. 57, Woodbury Storer *v.* Crawford, Logan et als.

An acceptance may be in writing or by parol. 3 Kent's Com., p. 100; 2 Greenl. Ev., 161.

The drawee's name alone on any part of the bill, is a sufficient acceptance. Byles on Bill of Ex., p. 164.

Simpson having accepted the order, in his own name, cannot now say that it is not his acceptance, although the order was directed to Simpson & Jackson.

When a bill is drawn upon several individuals and accepted by one only, the acceptance is good against the one who accepts. 3 Kent's Com., p. 85, in note.

The general rule is, that if a bill be drawn upon or endorsed in the name of A, and the partnership firm is that of A and B, then, although the contract, in respect of which the bill is given, may in fact be a joint contract, still the firm will not be liable on

Garwood v. Simpson.

the bill, because the bill, on the face of it, imports a several contract.

In this case, the names of the other partners cannot be supplied by intendment. Collyer on Partnerships, p. 376.

A defendant cannot plead to the merits, and put the plaintiff to the trouble and delay of a trial, and then set up a plea not founded in the merits of the case. Collyer on Partnerships, p. 630.

When the drawee accepted the bill, and fixed the amount in money, which he undertook and promised to pay to the payee or endorsee, the bill became negotiable paper.

The drawing of the bill, the presenting of it for acceptance, the fixing the amount, one thousand two hundred and ninety-three dollars and seventy-five cents, upon the bill, and the accepting for that amount, and the transfer of the bill by the payee to the endorsee, Garwood, was all done in good faith, and now, when Garwood calls for the money, it is unjust, as well as too late, for Simpson to attempt to avoid the payment.

When Simpson fixed the amount, one thousand two hundred and ninety-three dollars and seventy-five cents, as being the amount drawn for, he promised to pay that amount. The drawee received the acceptance for that amount, and Garwood, the endorsee, having paid the money to Tomlinson, relies upon the acceptance, and has the right to recover that amount.

*E. B. Mastick* for Respondent.

The instrument in question is not negotiable ; it is not a draft, or bill of exchange, and a recovery cannot be had on it as such.

" An order drawn for a particular fund, will operate as an assignment of the fund, but it will not be negotiable, and is not a bill of exchange." Cowperthwaite *v.* Sheffield, 1 Sand. S. C. R., 416. .

A note payable on a contingency, or out of a particular fund, is not negotiable. Coate *v.* Buck, 7 Metcalf R., 589; Cushman *v.* Haynes, 20 Pick. R., 132; Fiske *v.* Hill, 22 Pick. R., 83 ; Atkinson *v.* Manks, 1 Cow. R., 69, 107.

The paper not being negotiable, the rules governing commercial paper are not appliable, and the writing on the back cannot be construed into a contract different from what it clearly purports; that is to say, a mere acknowedgment by Simpson, one member of the firm, that such a balance was due on the cargo, not to Tomlinson, or any other person in particular.

It is clearly not an agreement by Simpson to pay that sum to anybody, but an admission that there was in the hands of Simpson & Jackson such a balance remaining unpaid to Carsen & Vance.

If it could be construed into a contract, on paper not negotiable, and he made liable, he would only be liable for the fund actu-

ally in his hands, and the plaintiff must aver and prove the amount.    Atkinson v. Manks, 1 Cow. R., 691, 707.

He does not acknowledge that he had anything in his hands. Nor is there any evidence showing that he had.   Nor is there anything in the statute declaring that a person may be charged as acceptor, by merely writing his name on paper not negotiable.

The proceeds of the cargo having been transferred to Tomlinson, was subject to the attachment of the intervenors, and they, having attached the same and recovered judgment before the endorsement to the plaintiff, were entitled to such proceeds.

The instrument not being negotiable, the plaintiff took it subject to any liens or claims that attached while in the hands of Tomlinson; and he occupies the same position Tomlinson would if he was the plaintiff prosecuting the action.   Chamberlain v. Day, 3 Cow. R., 353; Fahnestock v. Schoyer, 9 Watts' R., 102; 17 Vesey, Jr., 245; Willis v. Tevambly, 13 Mass. R., 204.

If it was not a bill of exchange on its creation, it could not become so afterwards so as to predicate an action on it against an acceptor or to charge him as such.   Kingston v. Long, 26 Com. Law, (abbreviated,) 193; Banbury v. Lissett, Stra., 1211; Chitty, J., 310; Haydock v. Lynch, Lord Raymond, 1563; Dawks v. Lord De Loraine, 3 Wils. R., 207; Chitty on Bills, 11 American edition, 144.

BURNETT, J., after stating the facts, delivered the opinion of the Court—TERRY, J., concurring.

The first question arising under the state of facts in this case, is, whether the order was a negotiable instrument at the time it was executed by Carsen & Vance.   It is objected that it was not a bill of exchange, because there was no sum certain stated, and it was payable out of a particular fund, and not generally.

It is well settled by all the authorities, that the first and principal requisite of a bill of exchange, is, that it must be for the payment of *money only*, and for a *named sum certain*.   (Chitty on Bills, 132, 133.)   And it would seem clear in this case, that although the order was drawn payable to Tomlinson *or order*, still, before he presented it for acceptance, he could not have transferred it as a negotiable instrument.   If it had been a bill of exchange, then, upon presentation and refusal to accept, a protest and notice would have been necessary to fix the liability of the drawers.

It is true, that a promissory note, or a bill of exchange, will be good when a blank is left for the sum, and that blank is filled up by the party to whom it is given.   But this order is a very different instrument.   Here the holder was not authorized, before negotiation, to state the sum for which the bill was drawn. This was not left discretionary with him, and yet it was not set-

tled by the order itself. When a bill is executed and delivered by the drawer, with a blank left for the sum, or time when payable, these matters are not certain, but the power to make them certain, is given to the holder. In this case, Tomlinson could not assign the order *before* it was accepted, and the sum ascertained. (4 Doug., 9; 26 Eng. Com. Law, 193; 22 Pick., 83.) The legal effect of this order was an assignment of the particular fund mentioned to Tomlinson. (5 Paige, 632; 6 Barbour, 182.)

But conceding that the order was not negotiable when drawn, was the conduct of the defendant such as to make a transfer of the instrument by Tomlinson to an innocent purchaser, without notice, binding upon the defendant?

The legal effect of the order being an assignment by Carsen & Vance of the particular fund to Tomlinson, the moment the order was accepted, and a certain sum was endorsed upon the order, that moment the debt became one from Simpson to Tomlinson, and the condition of Carsen & Vance, in respect to Tomlinson, was the same as if Simpson & Jackson had actually paid over the money to Tomlinson. Carsen & Vance had, doubtless, drawn this order in favor of Tomlinson, either as a conditional payment, or loan, and, when Tomlinson accepted the endorsment of Simpson, in lieu of the money, he necessarily released Carsen & Vance from any obligation to him. The debt then became a debt for a sum certain, due from Simpson to Tomlinson, or order, payable on demand. The legal effect of the endorsement of Simpson upon the order, was to incorporate the terms of the order with the endorsement, and upon the delivery of both to Tomlinson, the instrument became a direct and original undertaking on the part of Simpson to pay to Tomlinson, or order, the sum of money stated.

It must be conceded that had no process of garnishment been served, the assignment to plaintiff would have been good, and he would have been able, under our statute, to maintain a suit in his own name. And if assignable at all, then an innocent holder had the right to take it for what it purported to be. By the endorsement, the amount stated was *then* admitted to be due to Tomlinson; and having put this paper in circulation, the defendant Simpson is estopped from setting up any *antecedent* matter. Suppose Simpson had actually paid the money to Tomlinson, and then returned him this order thus endorsed, and Tomlinson had afterwards on the same day, sold it to an innocent purchaser for value, would not Simpson have been liable to the holder? If Simpson intended to secure himself from liability to third parties, he should have stated the fact in the endorsement, that the debt had been garnisheed. But no one looking at the order and endorsement, would ever suppose that such a thing had occurred. The endorsement contained nothing to put the purchaser even upon enquiry. Upon the face of the order and endorsement

there was due at the *time stated*, a certain sum which was admitted to be payable to Tomlinson or order, on demand. Having made this admission, and a third party having acted upon it, the defendant cannot be permitted to say that this sum was not then due to Tomlinson, but was due to his creditors.

The cases, cited by the learned counsel for the respondent, differ in their circumstances from the present case. In the case of Fisk *v.* Witt, principal, and Moore, trustee, certain negotiable notes had been placed by Witt in the hands of Moore for collection, for which Moore gave an accountable receipt, promising to account for the proceeds to Witt or bearer. Moore collected a portion of the notes, when a trustee process was served upon him, and afterwards his receipt was presented by a third party, who claimed to be the bearer. It was held that the receipt was not a negotiable security, because not a promise to pay a sum certain. In this case the bearer had taken the receipt without any indorsement by the trustee, stating the sum due. 22 Pick., p. 83.

Another case referred to by the counsel of respondent, is that of Cushman *v.* Haynes, principal, and Allen and others, trustees, 20 Pick., 132. The language of the Chief Justice, in delivering the opinion of the Court, would seem to sustain the view we have taken, though it must be conceded that the circumstances of the case itself were quite different from those of the case now under consideration. Haynes had consigned to the trustees certain goods to be sold on commission, and, at the same time, drew an order on them, payable to his order in thirty days, for the sum of one thousand dollars, on *what might be due*, after deducting all advances and expenses, which order was accepted by them. After this acceptance, and before the goods were sold, the trustees were summoned in a process of foreign attachment, and it was held that the accepted order was not a *negotiable* security, and that the *order* and *acceptance* could not operate as an assignment, not being made to a *third* person. In this case, the accepted order had not been assigned to a third person, and was for no definite amount, even *after* acceptance. The *acceptance* specified no certain sum, and the Chief Justice said: "But we are of opinion that the acceptance, not being for a sum certain, but for an uncertain amount—to wit, the balance of the proceeds of goods not then sold—was not negotiable." "It not being a negotiable security, the trustees would not be liable to an action upon it by an endorsee, and it did not amount to payment or an advance." If the *acceptance* had been for a sum certain, it is apprehended the decision of the Court would have been different.

For these reasons, it is my opinion that the judgment of the Court below should be reversed, and judgment rendered in that Court for plaintiff.

Garwood v. Simpson.

MURRAY, C. J.—I am compelled to dissent from the opinion of my brethren in this case, because I think that the certificate made by Simpson, of the amount due upon the order sued on, was not intended by him as an acceptance of the order, but merely as a statement of the amount due, on account of Carsen & Vance.

The money had been garnisheed in the hands of Simpson & Jackson, in a suit against Tomlinson, the holder of the order, before it had been presented for payment or acceptance; and the endorsement might be, and doubtless was, made for the purpose of informing Tomlinson of the amount due, without any intention, upon the part of the defendants, to become legally liable therefor. There is nothing in the endorsement which would warrant the Court in presuming that the defendants intended, unconditionally, to accept the order. In fact, when we take into consideration that the money had been previously garnisheed in the hands of the defendants, of which fact Tomlinson was doubtless informed, and that the defendant, Simpson, in making said endorsement upon the order, has carefully abstained from the use of any words which would tend to show an acceptance on his part, we are led to the conclusion that the endorsement was only intended as a memorandum of the amount due upon the account, and not as an acceptance of the order.

The majority of the Court, in deciding this case, have passed upon several intricate questions of commercial law, which I do not think involved, and therefore express no opinion upon the conclusions to which my brethren have arrived.

A rehearing being asked for, BURNETT, J., delivered the opinion of the Court, TERRY, J., concurring.

This case was decided at the last April Term of this Court, when the judgment of the Court below was reversed, and that Court directed to render judgment for the plaintiff. The defendant now asks this Court to so modify the judgment, as to allow a new trial in the Court below. The facts stated in the petition of defendant, and verified by the affidavit of his counsel, renders it proper we should state the grounds upon which we are compelled to deny the application.

In the opinion delivered, the plaintiff was considered as the innocent purchaser of the accepted order for value, and our decision was based upon that ground. The learned counsel for the defendant insists, that we were mistaken in this view, as no evidence was preserved in the record, and the entire case, so far as the facts were concerned, rested upon the special verdict of the jury.

In the answer of defendant, it was alleged, "that at the time of the alleged endorsement and transfer to the said plaintiff, he, the said plaintiff, had full knowledge of the aforesaid judgment,

execution, and levy, and the refusal of this defendant to accept the said order or bill of exchange." All the issues raised by the pleadings were submitted to the jury, and the jury among other things found, that "Tomlinson afterwards, and on the said fifteenth day of April, for a valuable consideration, indorsed and delivered said order to plaintiff."

The allegation by defendant, that the plaintiff, at the time of the indorsement, had full knowledge of the circumstances under which the acceptance was made, was an affirmative averment on the part of the defendant, which he was bound to prove. The finding of the jury does not sustain this affirmative allegation, but, on the contrary, substantially negatives such an idea. When the jury found that the plaintiff was a purchaser for value, they found, *prima facie,* that he was an innocent purchaser, and there was nothing in the finding to rebut this presumption. There was no motion made to set aside the verdict of the jury, and for a new trial. The plaintiff moved for judgment *upon the verdict;* the Court gave judgment against him, and he appealed.

The only question presented for the determination of this Court, was the action of the Court below in rendering judgment against the plaintiff upon the facts, as found by the jury. This Court could not review the facts of the case, as no motion was made for a new trial. Dewey *v.* Bowman, April T., 1857. And as the record disclosed no error in the Court below in rejecting proper, or in admitting improper, testimony, and as no new trial was demanded by *either* party, this Court could not order a re-examination of the issues of fact. All this Court could do, under the state of case disclosed by the record, was either to affirm or reverse the decision of the Court below, and order a final judgment upon the verdict of the jury.

The defendant states, in his petition, that on the trial, he offered to prove full knowledge on the part of the plaintiff, at the time of the endorsement of the paper to him, of all the circumstances under which the acceptance was made; that the evidence was rejected by the Court, and exception duly taken by the defendant, but that no statement of the evidence offered or given by the defendant was prepared, for the reason that judgment was rendered in his favor.

If the verdict was unjust to the defendant in not finding the true state of facts, he should have made his motion for a new trial, alleging the true grounds upon which the motion was made. It is the duty of parties to take their objections at the proper time, and in the proper order. The defendant having made no objection to the verdict, and having rested his case upon the facts as found by the jury, it is now too late to ask for a new trial. He should have made his motion for a new trial in the Court below, and if overruled, should have excepted and made a proper statement of the case. Had he done so, the ap-

peal by the plaintiff would have brought up the *whole record*, and this Court, in reversing the case, could have ordered a new trial. Dred Scott *v.* Sandford; United States *v.* Smith, 11 Wheat., 172. But there is nothing in the record to show that the Court rejected proper testimony, or that the verdict of the jury was contrary to the evidence, and this Court cannot look beyond the record. Parties should be careful to see that the record contains *all the facts of the case.* If they submit to a partial statement of facts, this Court can afford them no relief.

Motion denied.

MURRAY, C. J.—I am compelled to dissent from the foregoing opinion, for the same reasons that I dissented from the original opinion; being fully satisfied that the facts did not warrant the plaintiff's recovery.