## Case No. 10,683.

### PALMER v. ANDREWS.

[1 McAll. 491.] [1]

Circuit Court, D. California. Jan., 1859.

LIMITATION OF ACTIONS—MODES OF TAKING CASE
OUT OF STATUTE—LORD TENTERDEN'S
ACT—CALIFORNIA STATUTE.

There were three modes of taking a case out of the statute of limitations, prior to the passing of the act of 9 Geo. IV. c. 14 (Lord Tenterden's act). 1. Acknowledgment by words only. 2. A promise by words only. 3. Part payment of principal or interest. That statute substituted for acknowledgments and promises by words only, a writing embodying the same, and signed by the party to be charged, leaving part payment as it was before the act. The statute of limitations of this state must receive a similar construction.

[Cited in Kirk v. Williams, 24 Fed. 447, 449.]

This action was brought on a promissory note; the statute of limitations was pleaded, and to this a part payment before the maturity of the note, was replied. Held, that the replication was good. A jury was waived in this case and the cause submitted on the pleadings to the court.

J. B. Townsend, for plaintiff.
Love & Watson, for defendants.

McALLISTER, Circuit Judge. The grounds of the defense as stated in the brief of defendant's counsel are, that the part payment set up by plaintiff is insufficient to take the case out of the statute of limitations, which has been pleaded; and secondly, that the note sued on is not a promissory note. To sustain the position that part payment in this state is insufficient to take the case out of the statute of limitations under the law of this state, reference is made to the case of Fairbanks v. Dawson, 9 Cal. 89. To support the proposition that the note sued on is not a promissory note, the case of Garwood v. Simpson, 8 Cal. 101, is relied on. The court will consider these objections in their inverse order.

1. As to the character of this document, the objection is, that although a fixed sum is mentioned, inasmuch as it is to be paid with "current rate of exchange," it ceases to be a promissory note. It seems these words can have no meaning in this note, for it is difficult to perceive how the sum fixed can be rendered uncertain by them in a note executed and payable in the same place. Upon the ground of authority, too, a note payable for a fixed sum with interest is held good as a note. Pars. Merc. Law, 87. The court cannot therefore consider the note sued on in this case as void as a promissory note, for the reason assigned. In the case of Garwood v. Simpson, cited by defendant's counsel in support of his proposition, that the note sued

on in this case is no note, the instrument, the subject matter of controversy in that case, was in the form of a bill of exchange. No certain or fixed sum was named; uncertain as it was, it was made payable out of a particular fund.

The second ground taken is attended with more difficulty; because it is sustained by a decision of the supreme court of this state. In the case of Fairbanks v. Dawson, 9 Cal. 89, two of the judges (the third dissenting) decided that under the 31st section of the statute of limitations of this state, a part payment made before a contract has expired by limitation is insufficient to take the case out of the statute. The decision of the supreme court of this state is entitled to the greatest respect; but where the decision was by a divided court, and the question involved, to a certain extent, a commercial one, this court does not feel constrained to subject its views of the law to the control of the authority absolutely, but will look into the reason of the case.

The learned judges admit, in alluding to the statute of 9 Geo. IV. c. 14 (Lord Tenterden's act), "that the difference in the language of the British and California statutes is very slight, while their substance and meaning are the same." Although such is the fact, the court put a very different construction upon the California statute, from that which they were willing to concede to the British. This was not owing to any difference in the language of those portions of the two acts which related to "acknowledgments and promises," for it is admitted that the substance and meaning of both are the same; but the court placed their construction upon the import of the words in relation to acknowledgments and promises in the California statute, upon the omission of the legislature to insert in it the clause in the British statute, "that nothing therein contained shall alter or take away, or lessen the effect of any payment of any principal or interest made by any person whatsoever." The court, in Fairbanks v. Dawson, say, in relation to this clause, "It is clear that the legislature of this state intended to put part payment on the same footing with acknowledgments." Upon the implied intention of the legislature inferred from their omission to introduce the declaratory clause as to part payment, which was in the British statute, the court put a different construction upon the words "acknowledgments and promises." Now, in relation to the construction of the language in the California statute, it seems its obvious meaning is so clear, it is unnecessary to resort to any implication. The words are, "No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this statute, unless the same be contained in some writing signed by the party

to be charged thereby." This language is taken from the statutes of limitations which prevailed in other states. Similar words are used in the Massachusetts act. In Williams v. Gridley, 9 Metc. [Mass.] 483, the court quotes them, and the words are, "No acknowledgment or promise shall be evidence of any new or continuing contract whereby to take any case out of the operation of the provisions of this chapter, or to deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing, signed by the party chargeable thereby." And they say, "It is quite obvious that this enactment has introduced a material change in the effect to be given to the statute of limitation of personal actions. It has prospectively legislated out of the judicial forum those numerous and somewhat perplexing cases of alleged new promises, either express or implied, sustained by oral admissions and statements by the party sought to be charged. Thus far, the statute is plain as to the construction to be given to it."

About the construction, then, of that portion of the statute of Massachusetts which relates to acknowledgments and promises, and which is similar in language to our statute, the supreme court of Massachusetts had no doubt. The construction was, in its opinion, plain, and its sole object was to do away with acknowledgments and promises sustained only by oral admissions. The Massachusetts statute contained a clause similar to that in the British statute; but it never struck the court or the defendant's counsel, that the insertion of such a clause varied the construction of the plain import of the language in relation to oral promises. All that the defendant's counsel suggested in relation to that clause was, first, that evidence of such payment can be only shown by some written acknowledgment; second, that oral admissions of the party were incompetent to prove part payment. The court did not suggest that the clause in question had anything to do with the provision as to oral admissions, but regarded the clause as leaving the part payment as it was before the passage of the act, and the fact of part payment having been made might be proved, like any other fact. To the same effect is the case of Sibley v. Lumbert, 30 Me. 253.

An examination into the law as it existed at the time of the passing of our statute, and of the mischief the new act was passed to remedy, will aid in the proper construction of the act. This examination has been made by the present chief justice of England in the case of Cleave v. Jones, 6 Exch. 573, in commenting upon the statute 9 Geo. IV. c. 14 (Lord Tenterden's act), the language of which is "the same in substance and meaning" with that of the California statute. Anterior to the passing of that statute, according to the construction of the 21 Jac. I. c. 16, three modes were in practice to take a case out of the operation of that statute; first, an acknowledgment by words only; second, a promise by words only; third, part payment of principal or interest. The two former modes were verbal acknowledgments and declarations. The statute requires them to be in writing, and to be signed by the party charged; but it leaves out, by not including, part payment. True, it does not, by express enactment, except part payment, as did the British statute; but the maxim expressio unius est exclusio alterius, applies. Where the legislature have expressly spoken upon two of three modes of taking a case out of the statute, which were well known to commercial law, and are silent as to the third, the fair inference is, that they intended to leave it as it was.

Lord Campbell, in the case cited from the exchequer, considers part payment an acknowledgment by conduct. Now, whether we consult the ordinary meaning of the words acknowledgment or promise, or their lexicographical meaning, they indicate not the conduct but the verbal acts of men. The words in our act are, acknowledgment or promise. The two words, therefore, indicate the intention to refer to the same character of transaction, founded alike on parol. It is reasonable to suppose that a totally different meaning was not intended to be annexed to the words thus copulated. But to guard against all danger of such construction being put upon them, the British statute expressly inserted the clause as to part payment. The omission to take in the California statute the same precaution, is not a sufficient warrant for this court to extend, by judicial construction, the legislation of the state by implication to a different mode of taking a case out of the statute of limitations, upon the ground that, by omitting expressly to except it, their intention was to repeal it by the use of the words (acknowledgment and promise) which, as we have seen upon the highest judicial authority in England, from the time of 21 Jac. I., had always attached to them the meaning of being founded on words only.

In the view entertained by the court, judgment must be entered in favor of the plaintiff. Such an one will be drafted by the attorney for plaintiff, and submitted for approval and signature to the judge.